Filed 10/16/24  P. v. Tregaskis CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>RYAN EDWARD TREGASKIS,<br><br>　　　Defendant and Appellant. | A166958<br><br>(Napa County<br>Super. Ct. No. 22CR002002)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on September 30, 2024, be modified as follows:

On page 5, the first complete sentence, "In a bifurcated proceeding, the trial court found the aggravating factors to be true," is deleted and replaced with the following sentence, including new footnote 2 at the end:  "In a bifurcated proceeding, the trial court found four of the five alleged aggravating factors to be true.[1]"

Appellant's petition for rehearing is denied.  There is no change in the judgment.

Dated:　　　10/16/2024　　　　　　　　　　Jackson, P.J.　　　　　　, P. J.

---

[1] The prosecution withdrew the allegation that defendant was under supervision at the time of the offense.

1

Filed 9/30/24  P. v. Tregaskis CA1/5 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>RYAN EDWARD TREGASKIS,<br><br>     Defendant and Appellant. | A166958<br><br><br>(Napa County<br>Super. Ct. No. 22CR002002) |

     This is an appeal from judgment after a jury convicted defendant Ryan Tregaskis of four felony counts, including robbery (two counts) and evading an officer, and seven misdemeanor counts.  On appeal, defendant contends, and the People agree, that his conviction on count three for felony dissuading a witness and count nine for misdemeanor receiving stolen property must be reversed, his sentence on count eight for misdemeanor identity theft must be stayed under Penal Code section 654,[2] and an AIDS education fee must be struck.  Defendant also contends, and the People disagree, that his conviction on count one for felony robbery must be reversed because the trial court failed to give a unanimity instruction to the jury.

---

     [2] Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

For reasons set forth *post*, we reverse the judgment and remand with instructions to (1) vacate defendant's convictions on counts three and nine, (2) stay the sentence imposed on count eight under section 654, (3) strike the $287 AIDS education fee, and (4) resentence defendant as to all remaining counts and allegations in light of the changed circumstances. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) In all other regards, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2022, an information was filed charging defendant with first degree residential robbery (Pen. Code, § 211; counts one & two); dissuading a witness from reporting a crime (Pen. Code, § 136.1, subd. (b)(1); count three); evading an officer (Veh. Code, § 2800.2, subd. (a); count four); false imprisonment by violence (Pen. Code, § 236; count five); misdemeanor interference with a wireless communication device (Pen. Code, § 591.5; count six); misdemeanor vandalism (Pen. Code, § 594, subd. (b)(2); count seven); misdemeanor identifying information theft (Pen. Code, § 530.5, subd. (c)(1); count eight); misdemeanor receiving stolen property (Pen. Code, § 496, subd. (a); count nine); misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count ten); and misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364; count eleven). The information also alleged several aggravating circumstances with respect to the felony counts (counts one–five), including violent conduct indicating a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)); prior convictions that are numerous or of increasing seriousness (*id.*, rule 4.421(b)(2)); prior custody term (*id.*, rule 4.421(b)(3)); and being under supervision at the time of the offense (*id.*, rule 4.421(b)(4)).

A jury trial began on November 28, 2022, at which the following facts were revealed.

2

## I. *Trial.*

In September 2022, defendant, age 31, had been living in Karen S.'s house for about 10 years. However, Karen had recently told defendant that, due to his substance abuse and related issues, she wanted him to move out.

In the days leading up to the charged offenses, Karen twice called 911 seeking assistance with defendant due to his drinking and " 'out of control' " behavior. On September 7, 2022, in particular, Karen reported, "[H]e wants to threaten us. He wants to steal our stuff. He wants to slam doors." That same day, Karen filed a request for a restraining order and a "vacate order" against defendant. However, as of September 8, 2022, neither order had been issued or served.

### A. September 8, 2022 Incident (Counts One, Three, Six–Eight).

On September 8, 2022, Karen and defendant were arguing in the kitchen of her house. She told him that he was not supposed to be in the house and that she was going to call 911. The pair continued arguing, and defendant left.

Defendant later returned to the house. He and Karen argued again, and Karen repeated her warning that she would call 911. Defendant grabbed Karen's purse, which contained her phone. When Karen tried to get it back, the purse's strap broke and its contents "went flying . . . ." Karen told defendant she would call 911 from her bedroom, so she went there, locking the door behind her.

Karen called 911 from her bedroom. Defendant kicked the bedroom door a few times before leaving again. Karen later found her purse and most of its contents spread around the house and backyard. However, some of her credit cards were missing.

3

**B.    September 11, 2022 Incidents (Counts Two, Four–Five, Nine–Eleven).**

On September 11, 2022, defendant and Karen got into another argument after Karen found him in the house against her wishes.  Karen shouted at defendant to leave, and he grabbed her wrist, held her against the wall, and told her he "couldn't wait for [her] to die."  Defendant left the house as Karen called 911.

Defendant returned later that day, kicking open a side door.  Defendant entered Karen's bedroom and grabbed her phone from the bed.  When Karen tried to grab it back, defendant pushed her away, causing her to fall to the ground.  Karen's husband yelled at defendant to stop his behavior, and defendant left again and drove away, taking Karen's phone with him.  Karen called 911 on another phone.

A responding deputy sheriff spotted defendant driving in the vicinity of Karen's house and attempted to stop him.  Defendant accelerated away from the deputy.  The deputy, who was by this time joined by officers from the Napa County Sheriff's Office, Department of the California Highway Patrol and Napa Police Department, engaged in an extended vehicle pursuit of defendant that at times passed through a dense residential area and reached speeds up to 100 miles per hour.  Finally, the pursuit ended when the Napa County deputy sheriffs executed a specialized maneuver whereby their vehicle intentionally rammed defendant's car.  Defendant was arrested, and his car was searched, resulting in the discovery of Karen's phone and credit cards, suspected methamphetamine, and a suspected methamphetamine pipe.

## II.    *Verdict, Sentencing and Appeal.*

On December 2, 2022, the jury found defendant guilty as charged except that, as to count five, the jury acquitted him of felony false

4

imprisonment but found him guilty of the lesser included offense of misdemeanor false imprisonment. In a bifurcated proceeding, the trial court found the aggravating factors to be true. The trial court then sentenced defendant to a total prison term of three years fourth months, consisting of 16 months for count one plus two years for count four. In addition, the court imposed a concurrent three-year sentence for count two and a 16-month sentence for count three, stayed pursuant to section 654. Defendant timely appealed.

## DISCUSSION

The only contested issue on appeal is whether the trial court prejudicially erred by not giving a unanimity instruction to the jury in regard to count one, the robbery committed on September 8, 2022. The remaining issues are correctly conceded by the People and are discussed only briefly after the unanimity instruction issue.

I. *Contested Issue: Was a unanimity instruction required as to count one?*

In a criminal case, a jury verdict must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "Additionally, the jury must agree unanimously the defendant is guilty of a specific crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Ibid.*, italics omitted.) When the prosecution does not elect among crimes, "[a] unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not '[when] multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' " (*Id.* at pp. 1134–1135; accord, *People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.)

5

" ' "Neither instruction nor election are [*sic*] required, however, if the case falls within the continuous course of conduct exception." ' " (*People v. Leonard* (2014) 228 Cal.App.4th 465, 491.) This exception applies " ' "when the acts alleged are so closely connected as to form part of one continuing transaction or course of criminal conduct," ' or ' " 'when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.' [Citations.]" [Citation.]' [Citations.] The justification for the exception is that there is no need for an instruction when there is a single course of conduct because members of the jury cannot distinguish between the separate acts. Further, the instruction is unnecessary when the defendant proffers the same defense to multiple acts because a guilty verdict indicates that the jury rejected the defendant's defense in toto." (*People v. Hernandez, supra*, 217 Cal.App.4th at p. 572; accord, *People v. Fish* (2024) 102 Cal.App.5th 730, 738 [failure to give unanimity instruction is harmless error when "the record provides no rational basis, by way of argument or evidence, for the jury to have distinguished between the two acts offered in support of the crime"].)

Because our consideration of whether the trial court should have given a particular jury instruction involves a mixed question of law and fact which is " 'predominantly legal,' " we review de novo whether the specific instruction was required. (*People v. Hernandez, supra*, 217 Cal.App.4th at p. 568.)

Defendant argues the unanimity instruction was required because the evidence revealed two distinct takings on September 8, 2022, to wit, "the initial taking of [Karen's] purse, which Tregaskis immediately abandoned, and the subsequent taking of the credit cards, which the evidence indicated [he] must have retrieved after the purse and its contents 'went flying' . . . ."

6

We reject defendant's attempt to paint the taking of Karen's purse and the taking of her credit cards from within the purse as two distinct criminal acts. The evidence demonstrates both acts occurred as part of a single criminal incident on September 8, 2022, that cannot meaningfully be divided by time, space or intention. Defendant grabbed Karen's purse, including its contents, while she locked herself in a bedroom and called 911. Shortly thereafter, defendant left and Karen found most of the purse's contents in and around the house, but some of her credit cards were missing until police found them in defendant's car after he was arrested a few days later.

In closing arguments, the prosecutor made no attempt to distinguish the two acts in discussing the robbery on September 8, 2022. Instead, the prosecutor focused on the element of the robbery offense requiring evidence that the defendant took the property through use of fear or force: "So that is what I want you to focus on. When he took the purse. When he took the credit cards, the phone on the first day. When he took the phone on the second incident. Did he use force in doing that? . . . Did he use force when the purse strap was broken? [¶] That, there, in and of itself, the vandalism, proves that he used forced [*sic*] or fear to take the purse." Defense counsel, in turn, argued that, if the jury wanted to "hold him accountable of taking the things from his mother," it could find him guilty of the lesser included offense of grand theft of person: "[B]ut to get there you have to first find Ryan not guilty of the robberies."

Under these circumstances, no juror unanimity instruction was required, as there was no reasonable basis for the jury to distinguish defendant's taking the purse from his taking the credit cards contained therein. (*People v. Fish, supra*, 102 Cal.App.5th at p. 738.)

7

## II.    *Conceded Issues.*

The remaining issues raised by defendant and correctly conceded by the People are as follows: (1) the evidence was insufficient to convict defendant on count three, dissuading a witness; (2) defendant could not be convicted of count nine, receiving stolen property, because he was convicted of robbery of the same property (credit cards) in count one; (3) the concurrent sentence on count eight, identity theft, should be stayed pursuant to section 654; and (3) the $287 AIDS education fee should be struck.  We agree with the parties' positions and only briefly address each issue *post*.

### A.    Insufficient Evidence of Witness Dissuasion.

"Section 136.1 criminalizes trying to dissuade a victim from reporting a crime." (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.)  Conviction of this offense requires the jury to find the defendant knowingly and maliciously tried to prevent or discourage a crime victim from making a report of that victimization to law enforcement.  (*Id.* at pp. 1318–1319.)

Consistently with section 136.1, the trial court instructed the jury as to count three, dissuading a witness:  "To prove that the defendant is guilty of this crime, the People must prove that:

"1.    The defendant prevented or discouraged Karen S[.] from making a report that she was a victim of a crime to law enforcement;

"2.    Karen S[.] was a crime victim;

"AND

"3.    The defendant knew he was preventing or discouraging Karen S[.] from reporting victimization and intended to do so.

"A person is a *victim* if there is reason to believe that a federal or state crime is being or has been committed or attempted against him or her."

8

The prosecutor argued to the jury that the crime of dissuading a witness happened on September 8, 2022, "basically during the robbery, right before," when Karen was angry that defendant was in the house and told him that she was going to call the police, prompting defendant to grab her purse. Following a struggle, the contents of Karen's purse spilled out and she locked herself in the bedroom and used another phone to call 911. She later found her phone in the backyard.

During deliberations, the jury submitted a question on the dissuading count that stated, "What crime was Karen S[.] a victim of? Violation of the restraining order? Was it in effect[?]"

The court conferred with the attorneys, and the prosecutor stated that the People "argued a trespass, that [defendant] wasn't supposed to be there." The prosecutor also acknowledged the restraining order "hadn't been served. So a violation of the order was not our theory. Our theory is trespass . . . ."

After the conference, the trial court responded to the jury question as follows: "The jury needs to decide if Ms. S[.] was a victim of a state or federal crime. [¶] You did not receive any evidence regarding a violation of a restraining order."

On appeal, the parties agree there was no evidence defendant committed a trespass on September 8, 2022, since he had lived in Karen's house for about 10 years and was thus a tenant at will. A tenancy at will "may be terminated by the landlord's giving notice in writing to the tenant . . . to remove from the premises within a period of not less than 30 days." (Civ. Code, § 789.) Because there was no evidence that he was given 30 days' written notice to vacate the house, as legally required, defendant was not a trespasser and Karen was not the victim of a trespass for purposes of Penal Code section 136.1. Accordingly, we reverse count three for lack of evidence.

9

## B. Defendant cannot be convicted of both robbery and receiving stolen property.

Defendant contends and the People concede that count one, robbery, and count nine, receiving stolen property, cannot both stand based on section 496's prohibition on dual convictions for stealing and receiving the same property. They are correct.

Section 496, subdivision (a) provides that "[a] principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property."

Here, the record on appeal makes clear that defendant's conviction on count nine for receiving stolen property was based on his possession of the same credit cards that he stole during the robbery charged in count one. The trial court stayed defendant's sentence on count nine pursuant to section 654. We now hold that his conviction on count nine must be reversed.

## C. The sentence on count eight should be stayed.

Defendant next contends and the People concede that in light of his robbery conviction on count one, his concurrent sentence on count eight for identity theft must be stayed pursuant to section 654. This is correct.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course

10

of conduct encompassing several acts pursued with a single objective. [Citation.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

Here, defendant's identity theft conviction and his September 8, 2022 robbery conviction were based on a single physical act, to wit, his possession of the credit cards taken from his mother's purse. As the People acknowledge, there was no evidence that he took any action with these credit cards, such as attempting to use or sell them, aside from merely possessing them. Thus, under section 654, defendant could only be punished once for that act, which requires that his sentence on count eight be stayed.

### D. The AIDS education fee must be struck.

Lastly, we agree with the parties the $287 fee imposed for AIDS education must be struck. The court imposed this fee as to count ten, possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). Subdivision (b) of this provision states in relevant part: "The judge may assess a fine not to exceed seventy dollars ($70) against any person who violates subdivision (a), with the proceeds of this fine to be used in accordance with Section 1463.23 of the Penal Code." (Health & Saf. Code, § 11377, subd. (b).) Penal Code section 1463.23, however, was repealed effective January 1, 2018. (Stats. 2017, ch. 537, § 18.)

The parties correctly posit that the provision authorizing the AIDS education fee (Health & Saf. Code, § 11377, subd. (b)) was impliedly repealed in 2018, when the referenced statute (Pen. Code, § 1463.23) was actually

repealed, since it is no longer possible for "the proceeds of this fine to be used in accordance with Section 1463.23 of the Penal Code." (Health & Saf. Code, § 11377, subd. (b).) Accordingly, the fee is struck.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with instructions to (1) vacate defendant's convictions on counts three and nine, (2) stay the sentence imposed on count eight, (3) strike the $287 AIDS education fee, and (4) resentence defendant as to all counts in light of the changed circumstances. (*People v. Buycks, supra*, 5 Cal.5th at p. 893.) In all other regards, the judgment is affirmed.


Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A166958/*People v. Ryan Edward Tregaskis*

12